UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONALD TURSKEY and
TERESA TURSKEY,

                Plaintiffs,                        Case No. 1:21-cv-10265

v.                                          Honorable Thomas L. Ludington
                                          United States District Judge

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This is a negligence action arising under Michigan law. The insureds, Donald and Teresa Turskey, allege that their insurer, State Farm Fire and Casualty Insurance Company ("State Farm"), should have advised them about the availability of flood insurance before their cottage was damaged by the breach of a dam in May 2020. Specifically, Plaintiffs allege that State Farm "had a special relationship with [them] and owed a duty to take all reasonable and necessary steps to provide [them] with up-to-date assessments and advice." ECF No. 1-1 at PageID.13. State Farm has filed a motion for summary judgment, contending that it owed no duty to advise Plaintiffs. ECF No. 22. For the reasons stated hereafter, State Farm's motion will be granted.

**I.**

In 2005, Donald and Teresa Turskey built a cottage along Wixom Lake in Beaverton, Michigan. Mrs. Turskey's Dep. Tr., ECF No. 22-5 at PageID.178. Later that same year, they purchased homeowners insurance from State Farm. *Id.* Around the time that Plaintiffs purchased their policy, Mrs. Turskey asked a State Farm agent about flood insurance. *Id.* The agent told her

that the cottage was ineligible for flood insurance. *Id.* By all accounts, the agent was correct; Plaintiffs could not obtain flood insurance for the cottage because the City of Beaverton had not joined the National Flood Insurance Program (NFIP).[1]

Even so, Mrs. Turskey remained interested in flood insurance and called her State Farm agent every year after receiving State Farm's annual renewal paperwork in the mail. *Id.* at PageID.178–79. Each time she called, her State Farm agent, Chuck Moran,[2] told her that flood insurance was unavailable. *Id.*

In October 2018, the City of Beaverton joined the NFIP, allowing residents to purchase flood insurance from a "Write Your Own" (WYO) carrier or the Federal Government. *See* ECF No. 22 at PageID.141–42. After Plaintiffs received State Farm's renewal paperwork in July 2019, Mrs. Turskey called Moran to ask about flood insurance.[3] *See id.* at PageID.179–80; ECF No. 26-2 at PageID.286. As in prior years, Moran told her that flood insurance was unavailable. ECF No. 26-2 at PageID.286. But this time Moran was incorrect. Because Beaverton had joined the NFIP in 2018, Plaintiffs *could* purchase flood insurance for the cottage—albeit not from State Farm, as State Farm had not offered flood insurance in Michigan since 2012. ECF No. 22 at PageID.144.

Ultimately, Plaintiffs did not learn about the availability of flood insurance until May 2020, when the dam forming Wixom Lake's southern embankment broke, causing catastrophic flooding in the nearby area. Thousands of homes were damaged, including Plaintiffs' cottage. Plaintiffs

---

[1] The NFIP is a federal program that governs the terms and availability of flood insurance. *See* 42 U.S.C. §§ 4011–33. The NFIP is discussed in greater detail in Section III.D.ii, *infra*.

[2] Though Moran has been Plaintiffs' State Farm agent for several years, he is apparently not the State Farm agent that sold Plaintiffs their policy. *See* ECF No. 22-5 at PageID.178 (stating that when purchasing the State Farm policy in 2005, Mrs. Turskey spoke with an unidentified female agent).

[3] As explained in Section III.D.i, *infra*, the exact date of Mrs. Turskey's call is unclear.

filed a claim with State Farm for the damage but were denied coverage because their policy did not include flood insurance.

In January 2021, Plaintiffs brought this action against State Farm, alleging that Moran should have advised them as to the availability of flood insurance and that State Farm was vicariously liable for his negligence. ECF No. 1. In November 2021, State Farm filed a motion for summary judgment, arguing that Moran did not owe Plaintiffs a duty to advise. ECF No. 22. The parties have fully briefed State Farm's motion. *See* ECF Nos. 26; 27.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.

### A.

At its core, this case concerns an insurer's duty to advise the insureds about the adequacy and availability of coverage. Plaintiffs allege that their State Farm agent, Chuck Moran, should have informed them about flood insurance in 2019, after the City of Beaverton joined the NFIP.

ECF No. 1-1 at PageID.13–15. They claim that if Moran had advised them about the availability of flood insurance, they would have insured their cottage before it was damaged. *Id.*

"It is well-established that, in a diversity case such as this one, a federal court must apply the substantive law of the state in which the court sits." *Mill's Pride, Inc. v. Cont'l Ins.*, 300 F.3d 701, 704 (6th Cir. 2002) (applying Michigan law). In Michigan, a negligence claim has four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000) (footnote omitted). Accordingly, the threshold question is whether Moran owed Plaintiffs a duty to advise.

In Michigan, "[t]he existence of a legal duty is a question of law." *Valcaniant v. Detroit Edison Co.*, 679 N.W.2d 689, 691 (Mich. 2004). In deciding whether a duty exists, this Court must apply controlling decisions of the Michigan Supreme Court. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012) (applying Michigan law). If the Michigan Supreme Court has not squarely addressed an issue, this Court "must predict how the [Michigan Supreme Court] would rule by looking to all the available data." *Id.* In general, "[f]ederal courts should be 'extremely cautious about adopting "substantive innovation" in state law.'" *Id.* (quoting *Combs v. Int'l Ins.*, 354 F.3d 568, 578 (6th Cir. 2004)).

**B.**

The seminal case regarding an insurer's duty to advise is *Harts v. Farmers Insurance Exchange*, 597 N.W.2d 47, 48 (Mich. 1999). In *Harts*, a six-year-old boy was killed in a traffic accident with an uninsured motorist. *Id.* After being denied full coverage for the accident, the boy's parents sued their insurance agent, arguing that the agent should have advised them about uninsured-motorist coverage. *Id.* at 48–49. After the trial court and court of appeals ruled against the parents, the Michigan Supreme Court granted leave to appeal to determine "whether a licensed

insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage." *Id.* at 48. Ultimately, the *Harts* court determined that no such duty existed.

First, the court turned to the common law of agency. Because an insurance agent owes fiduciary duties to the insurer, the court reasoned, "he ha[s] no common-law duty to advise [the insureds]." *Id.* at 50 (first citing *Bruner v. League Gen. Ins.*, 416 N.W.2d 318, 319–20 (Mich. Ct. App. 1987); then citing *Nelson v. Davidson*, 456 N.W.2d 343, 345–46 (Wis. 1990); and then citing STEVEN PLITT ET AL., COUCH ON INSURANCE § 55:5 (3d ed. 2021)). As the *Harts* court further explained, "an [insurance] agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id.*

The court also emphasized that Michigan licensing statutes distinguish between insurance agents, who are "essentially order takers," and licensed insurance counselors, "who function primarily as advisors." *Id.* at 51 (citing MICH. COMP. LAWS §§ 500.1232, 500.2116). This distinction was proof that "[the Michigan] Legislature . . . [had] recognize[d] the limited nature of the agent's role." *Id.* at 50–51.

In addition to common-law principles and licensing statutes, the *Harts* court also cited "[s]ound policy reasons." *Id.* at 50. Specifically, the court stated that a general rule embracing the duty to advise would be untenable because it:

> (1) "would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available," (2) could result in liability for a failure to advise a client "of every possible insurance option, or even an arguably better package of insurance offered by a competitor," and (3) could provide an insured with an opportunity to self-insure "after the loss by merely asserting they would have bought the additional coverage had it been offered."

*Id.* (quoting *Nelson*, 456 N.W.2d at 346).

But like most general rules, the no-duty-to-advise rule has exceptions. As the *Harts* court explained, an insurance agent might have a duty to advise the insured when "an event occurs that alters the nature of the relationship between [them]." *Id.* at 51. The court dubbed this exception the "special relationship test" and identified four events that could trigger a duty to advise:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured.

*Id.* at 52 (footnotes omitted).

Based on the facts before it, however, the *Harts* court found that none of the four events had occurred. *See id.* at 52 (noting that the agent did not "misrepresent[] the coverage offered or provided," did not receive any ambiguous coverage request, and did not "expressly agree or promise to advise [the parents] about insurance coverage generally or uninsured motorist coverage specifically"). Therefore, the court affirmed the dismissal of the parents' suit. *Id.*

### C.

Plaintiffs acknowledge the general no-duty-to-advise rule but argue that their relationship with Moran and thus State Farm became "special" in 2019, when Mrs. Turskey asked about flood insurance. ECF No. 26 at PageID.272. They argue that Moran should have told her that the City of Beaverton joined the NFIP in 2018 and that flood insurance was available. *Id.* But instead, he falsely told her that flood insurance was *unavailable*, which in their view, triggered a duty to advise.[4] *Id.*

---

[4] Because Moran did not appear for his deposition, his exact wording is unknown. *See* ECF No. 26 at PageID.270. Nonetheless, Mrs. Turskey's undisputed testimony is that Moran told her that flood insurance was unavailable because the cottage "[was] not in a flood zone." ECF No. 26-2 at PageID.287.

At first glance, Plaintiffs' argument is persuasive. Because flood insurance was available, Moran's statement would seem to have triggered a duty to advise under *Harts*. *See Harts*, 597 N.W.2d at 52 (finding that a special relationship arises when "an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate").

But as State Farm notes, this case and *Harts* are distinguishable in at least one important respect: State Farm did not sell flood insurance in Michigan in 2019 and had not since 2012. This distinction is significant because, in seemingly all the Michigan cases discussing whether a special relationship existed, the policy or coverage at issue was one that the insurer offered. *See, e.g.*, *Maynard v. Murray*, No. 353850, 2021 WL 6064481, at *1 (Mich. Ct. App. Dec. 21, 2021); *Hastings City Bank v. Jackson Nat'l Life Ins.*, No. 251865, 2005 WL 602567, at *1 (Mich. Ct. App. Mar. 15, 2005); *Scarsella Tile & Marble, Inc. v. Sanders*, No. 213122, 2000 WL 33389889, at *1 (Mich. Ct. App. Dec. 19, 2000).

In other words, Plaintiffs argue for a substantive expansion of Michigan law. Rather than holding State Farm liable for not advising about its own products, Plaintiffs would hold State Farm liable for not advising about products sold by the Federal Government or other insurance companies. Plaintiffs have not identified any authority—persuasive or otherwise—that suggests that the "special relationship" test should extend to Plaintiffs' circumstances, and this Court is unaware of any such authority. *See Berrington*, 696 F.3d at 608 (in a diversity case, the district court "must predict how the court would rule by looking to all the available data").

Given the dearth of authority in support of Plaintiffs' view, this Court declines to extend the "special relationship" test beyond its usual domain. As previously noted, the "special relationship" test is a "very limited" exception to the general rule that an insurance agent has no duty to advise. *Harts*, 597 N.W.2d at 48. That general rule derives in part from common-law

principles of agency—principles that are at odds with Plaintiffs' theory of liability. *See id.* at 50 (noting that insurance agent must "act for [insurer's] benefit").

Similarly, Plaintiffs' reading of *Harts* would likely frustrate the public policy underlying Michigan's no-duty-to-advise rule. Indeed, in discussing the "[s]ound policy reasons" for the rule, the Michigan Supreme Court explained that a contrary rule might require insurance agents to advise clients of "an arguably better package of insurance offered by a competitor." *Id.* at 50. As a general matter, federal courts must be "extremely cautious about adopting 'substantive innovation' in state law." *Berrington*, 696 F.3d at 607. Given the nature of this case, that admonition is particularly salient here. Ultimately, without any sound reasoning or authority in support, this Court declines to depart from existing law and risk dramatically expanding the scope of an insurer's duty to advise.

For these reasons, Moran did not owe Plaintiffs a duty to advise about flood insurance. Because Plaintiffs cannot show that Moran owed them a duty, their negligence claim fails as a matter of law. *See Harts*, 597 N.W.2d at 52 (affirming summary disposition for defendants because the parents "failed to establish the duty element of their negligence claim against [the insurance agent]").

### D.

In addition to arguing that Moran owed no duty to advise Plaintiffs, State Farm makes two other arguments that should be addressed to complete the record.

### i.

First, State Farm argues that Mrs. Turksey's declaration, which describes her conversation with Moran in 2019, should be disregarded under the "sham affidavit doctrine." ECF No. 27 at

PageID.306. State Farm argues that Mrs. Turskey's declaration "directly contradicts" her deposition testimony that she could not remember when she spoke with Moran. *Id.*

The "sham affidavit" doctrine prohibits a party from "creat[ing] a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 501 (6th Cir. 2021) (quoting *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)) (internal quotation mark omitted); *see also Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 826 (6th Cir. 2019) (applying sham affidavit doctrine to declaration). "In determining the affidavit's admissibility at summary judgment, the district court must first consider 'whether the affidavit "directly contradicts the nonmoving party's prior sworn testimony,"' which, '[i]f so, absent a persuasive justification for the contradiction, the court should not consider the affidavit.'" *Johnson*, 13 F.4th at 501 (quoting *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019)).

During Mrs. Turskey's deposition, defense counsel asked her about the details of her call with Moran, which the complaint states occurred in July 2019. ECF No. 22-5 at PageID.179. Mrs. Turskey equivocated on the exact date:

> Q: I'm looking at Paragraph 24 of your complaint. And this sentence says that on or around July 29th of 2019, that you called the State Farm agency about insurance coverages for the property. Would that be accurate?
>
> A: I don't exactly know dates. But, yes, that sounds accurate.
>
> Q: Well, why is this date of July 29th, 2019 in your complaint?
>
> A: Because I often talk to my agents for updates on insurance. Periodically when I'm calling about things, I always ask if there's any updates I should know about anything. So I probably asked once again about flood insurance.
>
> Q: What is it about this July 29th date? Why is it that that date, July 29, 2019, sticks in your memory?
>
> A: I don't know.

*** 

Q: Okay. Did you specifically in that July 29th, 2019 communication with the agent's office ever talk specifically about flood insurance?

A: I probably asked. I periodically did when I talked to them.

*Id.* Shortly after that line of questioning, Plaintiffs' counsel tried connecting the July 29 date to the receipt of State Farm's renewal paperwork; he did not succeed:

Q: Okay. Do those documents come around the same time every year?

A: Yes.

Q: And is that in the summer?

A: I really don't know.

Q: Okay. And so when you receive those renewal documents, did you contact your State Farm agent to make inquiries about your policy, you know, upon receipt of those renewal documents?

A: Not every time. But, yes, I do.

Q: Okay. And do you recall doing that in July of 2019?

A: I really don't remember. . . .

*Id.* Though unable to recall the exact date of her call with Moran, Mrs. Turskey later testified that she called Moran "every year" to talk about coverage:

Q: Okay. So in the previous years, so the summer before, did you contact your State Farm agent to inquire about your policy, did it cover the cottage and whether you could get flood insurance?

A: I don't recall on that specific date that I did that.

Q: Okay.

A: But I do always call and make sure I have the appropriate coverage for my houses. That, I do.

- 10 -

Q: When you say always, is that something you do every year or every time you renew the policy?

A: Every year.

*Id.* at PageID.180.

Despite her deposition testimony, Mrs. Turskey states unequivocally in her declaration that she called Moran on July 29, 2019, and asked him about flood insurance. *See* ECF No. 26-2 at PageID.286. Regarding the sudden change in memory, Mrs. Turskey claims that she could not recall the date of her conversation with Moran during her deposition because defense counsel did not provide proper foundation. *See id.* ("State Farm's attorney asked me for specific dates, and without context, I could not remember the specific dates. . . . Since my deposition, I learned that July 29, 2019 represents my insurance policy's renewal date.").

Mrs. Turskey's explanation is questionable. Her counsel specifically asked whether she remembered receiving the renewal paperwork and calling Moran in July 2019, and she testified that she could not remember. ECF No. 22-5 at PageID.180. Still, Mrs. Turskey's declaration "directly contradicts" her deposition testimony only insofar as it relates to the precise date of the call. *See Johnson*, 13 F.4th at 501 (noting that "sham affidavit" doctrine must be construed "narrowly"); *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (noting that "sham affidavit" doctrine must be applied cautiously "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment").

Indeed, Mrs. Turskey testified at her deposition that she spoke periodically with Moran about coverage and called him at least once a year.[5] ECF No. 22-5 at PageID.180. So, with respect to the contents of her conversation with Moran, her declaration seems to supplement rather than

---

[5] Even taken alone, this testimony seems to create a question of fact regarding whether Mrs. Turskey asked Moran about flood insurance after Beaverton joined the NFIP.

contradict her earlier testimony. Further, the precise date of the call is nondispositive, so long as Mrs. Turskey called Moran after the City of Beaverton joined the NFIP but before the cottage was damaged.

For these reasons, Mrs. Turskey's declaration is disregarded to the extent that it specifically identifies July 29, 2019 as the date on which Mrs. Turskey called Moran to ask about flood insurance.

### ii.

State Farm also argues that, even if Moran breached a duty to advise, State Farm cannot be held liable for the breach because, as a matter of federal law, Moran was not acting as State Farm's agent when discussing flood insurance.[6] ECF No. 22 at PageID.150 (citing 44 C.F.R. § 61.5 (amended 2021)).

As previously noted, the Federal Government regulates flood insurance through the NFIP, a federal program that Congress enacted in 1968 as part of the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001 *et seq.* As relevant here, the NFIP "has two components: (1) a system for providing flood insurance, and (2) a unified national plan for flood management." *D&S Remodelers, Inc. v. Wright Nat'l Flood Ins. Servs.*, 725 F. App'x 350, 354 (6th Cir. 2018). The standard terms and conditions of flood insurance are governed by the "Standard Flood Insurance Policy" (SFIP), which the Federal Emergency Management Agency ("FEMA") published by regulation. *Id.* Under the NFIP, individuals may purchase flood insurance for eligible property

---

[6] Confusingly, State Farm also argues that it cannot be held liable for Moran's negligence because he was an independent contractor. ECF No. 27 at PageID.311–12. Because State Farm raised this argument for the first time in its reply brief, it is deemed waived. *See Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) ("Generally speaking, arguments raised for the first time in reply briefs are waived, and this applies both on appeal, and to summary judgment motions filed in the trial court." (internal citations omitted)).

either from the Federal Government or from a WYO carrier, which acts a "fiscal agent[] of the federal government." *Id.*

State Farm's argument relies on one of FEMA's regulations governing the terms and conditions of the SFIP. The regulation provides, in relevant part:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, *and the duly licensed property or casualty agent acts for the insured* and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

44 C.F.R. § 61.5(e) (amended 2021) (emphasis added). Because an insurance agent offering a flood-insurance policy "acts for the insured," *id.*, many courts have held that an insurer cannot be held vicariously liable for its agent's negligence in handling the policy,[7] *see, e.g.*, *Remund v. State Farm Fire & Cas. Co.*, 483 F. App'x 403, 408 (10th Cir. 2012) ("By creating the legal fiction that an insurance agent 'acts for the insured,' instead of for her employer (the private insurance company), § 61.5(e) shields the private insurance company from liability for certain of the agent's tortious acts."); *Bull v. Allstate Ins.*, 649 F. Supp.2d 529, 542 (W.D. La. 2009) ("By its own terms, 44 C.F.R. § 61.5(e) effectively negates any vicarious liability claim by the Bulls against Allstate for Agent Fear's negligence because Agent Fear had no duty to act as an agent of Allstate."); *Demouy v. Allstate Ins.*, No. CIV.A. 06-9629, 2008 WL 3851594, at *3 (E.D. La. Aug. 12, 2008).

State Farm argues that, for similar reasons, it cannot be held vicariously liable for Moran's alleged breach of the duty to advise. ECF No. 22 at PageID.153. But as Plaintiffs note, Moran did

---

[7] Similarly, the Sixth Circuit has held that the NFIA "preempts state-law causes of action based on 'the handling and disposition of SFIP claims.'" *Harris v. Nationwide Mut. Fire Ins.*, 832 F.3d 593, 596 (6th Cir. 2016) (quoting *Gibson v. Am. Bankers Ins.*, 289 F.3d 943, 949 (6th Cir. 2002)).

- 13 -

not sell any flood-insurance policy to Plaintiffs or anyone else in Michigan. ECF No. 26 at PageID.280. Indeed, Plaintiffs' case is built upon the notion that Moran never even told them about flood insurance. *See* ECF No. 1 at PageID.13–15. State Farm does not point to any case extending § 61.5(e) to these circumstances, and State Farm's reference to the cases mentioned above is unpersuasive. Invariably, each of those cases involved an insurance agent's negligence in handling or procuring a flood-insurance policy. But as stated, no such negligence is alleged here. Simply put, § 61.5(e) does not apply.

**iii.**

In summary, neither of State Farm's additional arguments warrant the entry of summary judgment in its favor. Nonetheless, State Farm's motion for summary judgment will be granted because Plaintiffs have not shown that Moran owed them a duty to advise. *See supra* Section III.C.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgement, ECF No. 22, is **GRANTED**.

Further, it is **ORDERED** that Plaintiffs' Complaint, ECF No. 1, is **DISMISSED**.

Dated: February 18, 2022                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge